## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION at ASHLAND

**Civil Action No. 06-9-HRW**

**BEDFORD F. BOYLSTON, M.D.,**                                             **PLAINTIFF,**


**v.**                        **MEMORANDUM OPINION AND ORDER**


**OUR LADY OF BELLEFONTE**
**HOSPITAL, INC.,**                **DEFENDANT / THIRD PARTY  PLAINTIFF,**

**v.**

**BEDFORD F. BOYLSTON, M.D., P.S.C.,**     **THIRD PARTY DEFENDANT.**

This matter is before the Court upon the Motion of Defendant / Third-Party Plaintiff Our Lady of Bellefonte Hospital, Inc.'s Motion for Summary Judgment [Docket No. 61].   This matter has been fully briefed [Docket Nos. 62 and 63] and is ripe for decision.   For the reasons set forth below, the Court finds that Our Lady of Bellefonte Hospital, Inc. is entitled to judgment as a matter of law as to Plaintiff's claims against it as well as with regard to its Third-Party Complaint and Counterclaim.

## I.     FACTS

In March 2003 Plaintiff entered into a Physician Recruitment Agreement ("Agreement") with Our Lady of Bellefonte Hospital ("OLBH") [Docket No. 1,

Exhibit 2].  The Agreement was signed by Plaintiff and the then-CEO of OLBH,
Robert Maher.

Under the Agreement, Plaintiff agreed, *inter alia*, to maintain a medical
practice with OLBH's community beginning on April 1, 2003 and continuing until
April 1, 2008.  In consideration thereof, OLBH agreed to provide Plaintiff with
financial assistance  to assure that his monthly cash receipts equalled $39,583.33
for each of the first twenty-four months of the Agreement's term.  The total
assistance was not to exceed $500,000.

A portion of the assistance, $20,000, of the $500,000 was considered a
Relocation Bonus and deemed forgiven under the terms of the Agreement after
Dr. Boylston completed six months of work at OLBH.  The remaining $480,000
represented Loan Assistance, which Plaintiff agreed to repay in 36 equal monthly
installments during the final three years of the Agreement.  However, for each
month of the final three years during which Dr. Boylston fulfilled his obligations
under the Agreement, OLBH would forgive one-thirty-sixth of the Loan
Assistance.  Yet, if Dr. Boylston failed to fulfill his obligations, he would be
considered to be in breach of the Agreement.  Under its terms, any breach of the
Agreement constituted default upon which "all unpaid Loan Assistance and
interest thereon becomes immediately due and payable" [Docket No. 1, Exhibit B

2

to Exhibit 2, ¶6].

On January 20, 2005, Plaintiff was called into active duty by the United States Army Reserves effective January 31, 2005 [Docket No. 61, Exhibit C].

On January 25, 2005, Plaintiff sent a letter to the OLBH Medical Staff Office, stating "I have been mobilized by the U.S. Army and am closing my office effective 1/27/05. I do not know the duration. I will call when I get back" [Docket No. 61, Exhibit E].

During this time, Plaintiff placed an advertisement in the local newspaper, stating that his office "will be closed until further notice" [Docket No. 61, Exhibit D].

In addition, Mark Gordon, the CEO of OLBH, testified that Plaintiff verbally notified him of his intent to permanently leave the OLBH community [Deposition of Mark Gordon, p. 52-53, Docket No. 61, Exhibit G].   This testimony is not disputed by Plaintiff.  On the other hand, Plaintiff testified that he told other individuals that he intended to return to OLBH [Deposition of Bedford Boylston, p. 94, L. 205, Docket No. 62, Exhibit 20].

On January 28, 2005, Gordon sent a letter to Plaintiff, which states:

> We understand through your attorney, David Welch, and your communications to our Medical Staff office, that you have closed your medical office and practice to

3

report to active military service in Texas.  As a result,
this letter will serve as written notice of your breach of
the Physician Recruitment Agreement dates March 13,
2003.  Specifically under Section 10.2.8, you are deemed
to be in material breach in the event that you fail to
maintain a medial (sic) practice in the Hospital's
community.

[Docket No. 61, Exhibit F].

On February 14, 2005, Dr. Boylston penned a second "[t]o whom it may

concern" letter advising that he had been mobilized into the military for an

"unknown duration."  He further stated "I  would request a leave of absence during

my stay in the U.S. Army." [Docket No. 62, Exhibit 26].

Dr. Boylston was in the active service of the United States Army from

January to December 2005 [Deposition of Bedford Boylston, p. 105, l. 10-16,

Docket No. 61, Exhibit B].

While on active duty, Plaintiff began looking for employment outside of the

OLBH community [Deposition of Bedford Boylston, p. 107, l. 22- p. 108, l. 7,

Docket No. 61, Exhibit B].

Following his discharge from the military in December 2005, rather than

returning to the OLBH community, Plaintiff took a  temporary position at clinic in

Wisconsin, ultimately signing an employment agreement with Surgical Associates

in Maryland in April 2006 [Deposition of Bedford Boylston, p. 105, l. 24- p. 106,

4

l. 21 and p. 109, l. 21- p. 110, l. 17, Docket No. 61, Exhibit B].   According to the

record, Plaintiff is currently employed at Union Hospital in Elkton, Maryland

[Deposition of Bedford Boylston, p. 111, l. 8- p. 112, l. 9, Docket No. 61, Exhibit

B].

      To date, the full Loan Assistance balance remains unpaid.

## II.   PROCEDURAL HISTORY

      On December 13, 2005, Plaintiff filed this civil action against OLBH as

well as Mark Gordon and Eugene DeGiorgio, Jr., M.D., the chief of the medical

staff.[1]  This matter was originally filed in Greenup Circuit Court, Greenup

County, Kentucky and removed to this Court by the Defendants [Docket No. 1].

      In his Complaint, Plaintiff alleges that he has complied "in all respects with

all obligations required of him under the [Agreement]." [Docket No. 1, Exhibit 2,

¶10].  He further alleges that as a result of the Orders from the United States of

Army, he was "required to close is medical and surgical practice in this area and

report to active military service." [Docket No. 1, Exhibit 2, ¶10].

      Plaintiff alleges that OLBH, by and through its CEO Mark Gordon,

determined that Plaintiff's compliance with the Orders was a breach of the

---

[1]     By Order entered on August 9, 2006, this Court dismissed Plaintiff's claims
against the individual Defendants [Docket No. 25].

Agreement [Docket No. 1, Exhibit 2, ¶11]. Plaintiff claims that OLBH's actions

violate the Servicemembers Civil Relief Act 50 U.S.C. Appx. Section 501, et seq

[Docket No. 1, Exhibit 2, ¶12].

   In his prayer for relief, Plaintiff seeks to enjoin OLBH from alleging that he

breached the Agreement and seeks to recover monetary damages from OLBH, "by

reason of its breach of the [Agreement]" for loss of income, impairment to his

ability to earn money with his profession, as well as other general damages.

[Docket No. 1, Exhibit 2, ¶1].

   Plaintiff subsequently filed an Amended Complaint [Docket No. 6],

asserting that the hospital improperly failed to verify his affiliation with it in

response to a request from Calvert Memorial Hospital.

   In August of 2006, OLBH filed a Third Party Complaint against Bedford

Boylston, M.D., P.S.C., a Kentucky professional services corporation, for breach

of the Agreement and to recover sums owed to the hospital for the loan provided

to Boylston [Docket No. 9].

   On September 8, 2006, OLBH filed an Amended Third-Party Complaint, as

well as a Counterclaim against Dr. Boylston, individually, seeking damages as a

result of Dr. Boylston's breach of the Agreement [Docket Nos. 30 and 31].

   OLBH seeks judgment as a matter of law as to Plaintiff's claims against it as

6

well as with regard to its claims against Plaintiff.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Plaintiff. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence  on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

## IV. ANALYSIS

### A. Plaintiff's claim of violation of the Servicemember Civil Relief Act fails a matter of law as the Act does not provide for the relief applicable to this action.

In his Complaint, Plaintiff alleges a general violation of the

7

Servicemembers Civil Relief Act, §§ 1-700, 50 U.S.C.A. Appendix, §§ 501-590,

("SCRA").    Yet, he fails to identify which section or sections of the Act which

would entitle him to relief.

The SCRA, commonly referred to as the Soldiers and Sailors Relief Act,

was enacted to "strengthen and expedite the national defense" by "enabling

[servicemembers] to devote their entire energy to the defense needs of the Nation."

50 App. U.S.C. § 502 (2008).    The Act does not, as implied by Plaintiff, absolve

servicemembers of their contractual obligations or discharge their civil liabilities.

*See e.g. Graves v. Bednar*, 95 N.W. 2d 123, 128 (Neb. 1959) ("the purpose of the

[SCRA] is to protect rights, not to grant immunity from liability").  "[I]t only

allows a postponement until such time as the Defendant is unhampered by his

military service to defend such actions." *Royster v. Lederle*, 128 F.2d 107 (6th Cir.

1942).   Thus, Plaintiff cannot wield the Act against OLBH, in the manner

presented.

Nor does the  remedy afforded by the SCRA, to-wit, a stay of judicial

proceedings, provide Plaintiff with a sword against OLBH.  Rather, the SCRA

prevented OLBH from enforcing the Agreement while Plaintiff was on active

duty.  In other words, any action pursuant to the terms of the Agreement was

tolled, pending Plaintiff's discharge from active duty.  However, upon discharge,

8

pursuant to the SCRA, the Agreement would resume.   As set forth *infra*,

following his discharge from the military, Plaintiff did not fulfill his obligations

under the Agreement.

Notably, in his deposition, Plaintiff discussed that he had been called into

active duty while working at another hospital, sometime prior to his employment

with OLBH.   He testified that although that particular agreement did not

specifically include a clause pertaining to military duty, he understood that

pursuant to "federal law" "the contract does not void on being mobilized."

[Deposition of Bedford Boylston, p. 46, l. 8-13, Docket No. 61, Exhibit B].   He

further explained "[t]he contact is placed in a suspended animation pending the

return" [Deposition of Bedford Boylston, p. 46, l. 13-14, Docket No. 61, Exhibit

B].   Given Plaintiff's obvious understanding of the SCRA, it is even more unclear

what he seeks to allege against OLBH.

Under the facts of this case, Plaintiff cannot state a claim for relief under

the SCRA; thus, OLBH is entitled to judgment as a matter of law.

**B.      Plaintiff's has not set forth an issue of material fact with respect
to his breach of contract claim.**

Plaintiff claims that OLBH breached the Agreement by terminating his

employment.   Specifically, Plaintff contends that the January 28, 2005 letter was a

9

notice of termination.

The Court disagrees.   First, nowhere in the letter does OLBH state that Plaintiff's employment is terminated effective immediately or that Plaintiff is not to return to OLBH following active duty.   Instead, the letter states " under Section 10.2.8, you are deemed to be in material breach *in the event* that you fail to maintain a medial (sic) practice in the Hospital's community" [Docket No. 61, Exhibit F] (emphasis added).   Rather then terminating the Agreement, the letter serves to remind Plaintiff of his obligations under the same.

Further, the letter was written in response to Dr. Boylston's written notice that he was closing his office for an indefinite period of time.  [Docket No. 61, Exhibit E].  In addition to setting forth the basic tenets of the Agreement, in the letter, OLBH gives Plaintff the opportunity to avoid or cure a breach by returning OLBH following his active military service.  However, Plaintiff opted to permanently close his practice and not return to the OLBH community.

Moreover, had Plaintiff truly considered the letter as notice of termination of his employment, what of the February 14, 2005 letter in which Plaintiff states "I would request a leave of absence"?  If Plaintiff believed he  had been terminated seventeen days earlier, this letter would serve no purpose whatsoever.

Further belying Plaintiff's contention of termination is OLBH's

representation to third parties, on six separate occasions between February 2005
and June 2006, in response to requests for verification of Plaintiff's status at
OLBH, that Plaintiff actively held staff privileges but was on a leave of absence
by virtue of his call to active military duty.

First, by letter dated February 14, 2005 to the US Army Medical
Department Recruiting Team, OLBH verified Plaintiff's status at OLBH as
"active" from 2003 "thru present" [Exhibit 63-2, Exhibit 1].

By letter dated on January 31, 2006 to the Wisconsin Department of
Regulation and Licensing, OLBH represented Plaintiff's status as "active" from
April 2003 with a leave of absence due to military duty [Exhibit 63-2, Exhibit 2].

Again, by letter dated on January 31, 2006 to the Southern Maryland
Hospital Center, OLBH represented Plaintiff's status as "active" from April 2003
with a leave of absence due to military duty [Exhibit 63-2, Exhibit 2].

The same response was given to requests from Doctors Community Hospital
in Lanham, Maryland, Calvert Memorial Hospital in Prince Frederick, Maryland
and Civista Medical Center in LaPiata, Maryland by letters dated March 29, 2006,
April 14, 2006 and June 19, 2006, respectively, OLBH represented Plaintiff's
status as "active" from April 2003 with a leave of absence due to military duty
[Exhibit 63-2, Exhibits 4, 5 and 6].

This evidence begs the question: why would OLBH have listed Dr. Boylston as being active / on a leave of absence if OLBH had terminated his employment in January 2005?

Plaintiff cannot have it both ways. The evidence in the record clearly establishes that neither Plaintff or OLBH believed that Plaintiff was terminated from his employment at OLBH. The subject letter cannot be considered a notice of a termination.

Nor is the letter indicative of OLBH anticipatory breach or repudiation of its obligations under the Agreement. Indeed, as of January 2005, there was nothing for OLBH to repudiate. By that time, Dr. Boylston had received the full amount of Loan Assistance. The obligations remaining under the Agreement were those of Dr. Boylston, to-wit, continue to work at OLBH and receive loan forgiveness or leave the OLBH community and repay the loan.

The letter is not, as argued by Plaintiff, an unequivocal statement by OLBH that it would not perform its contractual obligations. As such, it is not a legally sufficient anticipatory repudiation. Rather, it is merely a recitation of Plaintiff's obligation under the Agreement, in response to Plaintiff's statements and conduct regarding the closing of his office.

The Court does acknowledge, however, that the letter lacks precision.

12

Gordon should have stated that Plaintiff had thirty days *following his discharge from active military serve* in which to resume his practice or be deemed in material breach of the Agreement. Although inartfully drawn, the letter does not have the legal significance attributed to it by Plaintiff; it neither terminates his employment or repudiates the Agreement. Plaintff has failed to properly "set out specific facts showing a genuine issue for trial." *Id.* Thus, summary judgment is appropriate as to this claim.

### C. OLBH is entitled to judgment on it's Counterclaim and Third-Party Complaint.

OLBH seeks summary judgment as to its claim against Plaintff for breach of the Agreement and judgment in its favor for the $480,00 owed by Plaintff as a result of the purported breach.

The Agreement explicitly provides that failure to maintain a practice triggers Plaintiff's obligation to repay the $480,000 in Loan Assistance provided to him by OLBH. Period.

Plaintiff does not respond to or otherwise refute two critical facts: first, that the Agreement required Plaintiff to continuously maintain a medical practice in the OLBH community and, second, that Plaintiff failed to continuously maintain a medical practice in the OLBH community following his active duty in

13

the Army.    Instead, Plaintiff merely contends that he "demonstrated a clear intent" to return to OLBH.   The Court assumes Plaintiff's argument rests upon his February 14 missive.   Yet his actions during the relevant time belie his purported intent to return.   For example, Plaintiff testified that he was looking for other employment while still on active duty [Deposition of Bedford Boylston, p. 107, l. 22- p. 108, l. 7, Docket No. 61, Exhibit B].   In addition, Plaintiff does not refute the testimony of Mark Gordon regarding Plaintiff's verbal communication of is intent not to return to the OLBH community following his discharge from active duty.  [Deposition of Mark Gordon, p. 52-53, Docket No. 61, Exhibit G].

 Dr. Boylston's obligations under the Agreement are clear and undisputed, as is his failure to fulfill the same.  As such, OLBH is entitled to summary judgment.

## V.    CONCLUSION

The Court having reviewed the motion, Plaintiff's responses thereto and the record in this matter, finds that no genuine issues of material fact exist and that OLBH is entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 61] be **SUSTAINED** and Plaintiff's claims against it are  hereby **DISMISSED WITH PREJUDICE.   IT IS FURTHER**

14

**ORDERED** that within **FIVE DAYS** of entry of this Order, Defendant tender a

proposed Judgment to the Court.

This the 21ST day of November, 2008.

HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE

15